**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**DENISE ANN CROOKER,**                                    :

                          **Plaintiff,**          :          **CIVIL ACTION NO. 3:20-1695**

            **v.**                                    :                     **(JUDGE MANNION)**

**TESSITORE, et al.,**                                    :

                          **Defendants.**          :

### MEMORANDUM

Pending before the court is defendants' motion for summary judgment, (Doc. 99), and Magistrate Judge Schwab's report and recommendation on defendants' motion for summary judgment, (Doc. 116).[1] Both the plaintiff, (Doc. 120 & 121), and defendants, (Doc. 118 & 119) have filed objections to Judge Schwab's report and recommendation. Defendants filed a response to plaintiff's objections. (Doc. 122). The court will adopt Judge Schwab's report and recommendation for the reasons explained below.

---

[1] In his correspondence, plaintiffs' counsel misidentifies Magistrate Judge Schwab as "Magistrate" Schwab. The title "magistrate" no longer exists in the U.S. Courts, having been changed from "magistrate" to "magistrate judge" in 1990. Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, §321 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge."). Plaintiffs' counsel is reminded to use the correct title in the future, when referring to Judge Schwab.

**I.    Report and Recommendation of Judge Schwab**

      **a.  Standard of Review[2]**

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D. Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D. Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not,

---

[2] The factual background will not be repeated as Judge Schwab's report and recommendation contains an accurate background of the case.

the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

### b. Discussion

Judge Schwab's report and recommendation held that summary judgment should be granted as it relates to probable cause for the search warrant and seizure of the animals. (Doc. 116, p.32). Both parties object to the report and recommendation of Judge Schwab. The defendants object to the report and recommendation on the basis that the motion for summary judgment was on all counts of the complaint. The defendants request that this court now *sua sponte* decide if probable cause existed for Crooker's arrest. The defendants' motion for summary judgment separated the motion into three stages of probable cause for: the search warrant, the seizure of the animals, and the arrest of Crooker. The defendants argue that if probable cause existed at each stage, then the plaintiff's complaint should be dismissed. Plaintiff presents four objections to the report and recommendation. First, plaintiff objects to the scope and mechanism of analysis used. Plaintiff argues that Pennsylvania's Rules of Criminal Procedure require this court to constrain its analysis to the four corners of

the affidavit of probable cause used to apply for the search warrant. Second, plaintiff objects that she was not at the property during the timeframe of August 24, 2018 through September 9, 2018. Third, plaintiff objects to the seizure of the rabbit because it was not mentioned in the affidavit of probable cause. Lastly, plaintiff objects to the ownership of the animals contained within the report and recommendation. Crooker says there is no evidence as to the ownership being "theirs."

Crooker's complaint states four federal causes of action. First, a 42 U.S.C. §1985 conspiracy claim in violation of her Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution. Counts II and III claim through §1983 a violation of plaintiff's Fourth, Fifth, and Fourteenth Amendment rights. Count IV asserts a Monell claim pertaining to PSP's policies, patterns, and practices that led to an alleged violation of plaintiff's rights and a failure to supervise and train the officers involved. Counts V – VII pertain to state law claims for malicious prosecution, conversion, and replevin.

First, the court will separate the analysis of probable cause into three sections: the search warrant, the seizure of the animals, and then the court will separately address the arrest of Crooker. Judge Schwab addressed a

- 4 -

finding of probable cause as it pertains to the search warrant and the seizure of the animals.

### i.  Probable Cause for the Search Warrant

Plaintiff's objections pertain to the core findings of Judge Schwab's report and recommendation. As such, the court will utilize the objections to review the core findings of the report and recommendation and frame the discussion of the issues. Plaintiff has four objections to Judge Schwab's report and recommendation. First, Crooker challenges the "Scope and Mechanism of Analysis Used."  As a preliminary matter, plaintiff argues in numerous briefs that the Pennsylvania Rules of Criminal Procedure control. Plaintiff contends that Judge Schwab's analysis "erroneously" failed to confine its analysis to the four-corners of the affidavit as Pennsylvania law requires. (Doc. 121, p.1). Crooker writes, "had this been a suppression motion in state criminal court," but this is not a suppression motion in state criminal court. The current question before the court pertains to §1983 and a violation of the plaintiff's Fourth Amendment rights. The Third Circuit has explained:

> A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in

> Franks v. Delaware, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). See Lippay v. Christos, 996 F.2d 1490, 1502, 1504 (3d Cir. 1993). This is true whether the alleged falsehood is an affirmative misrepresentation or a material omission. See, e.g., United States v. Frost, 999 F.2d 737, 742–43 & n. 2 (3d Cir. 1993); Stewart v. Donges, 915 F.2d 572, 582 (10th Cir. 1990).
>
> Under Franks and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. See Franks, 438 U.S. at 171–72, 98 S.Ct. at 2684–85; Frost, 999 F.2d at 742–43; Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994).

Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). While the plaintiff spent numerous pages, multiple briefs, and several filings arguing that the Pennsylvania Rules of Criminal Procedure apply, she has never identified any federal case law that indicates state criminal procedure must apply when suing under §1983 for violations of her constitutional rights. Id. (applying federal procedural law to plaintiff's §1983 claims).

Under Franks, Crooker has the burden to prove "the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and that such statements or omissions are material or necessary." Franks, 438 U.S. at 171. As Judge Schwab explained in her report and recommendation, Crooker does not allege that the officers knowingly and

deliberately or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in the application for the warrant. Crooker argues that the statement "[a]ll of the dogs that were observed were emaciated" was untrue as two of the dogs were, allegedly, according to her, in ideal body condition and that the omission of the rabbit's body condition from the affidavit was a material omission. (Doc. 121). Plaintiff attempts to utilize the reports by Veterinarian Thompson after the animals were seized to argue that the animals were not "emaciated" and that it is allegedly anatomically impossible for a dog to urinate blood.[3] Officers are not veterinarians. The Third Circuit has explained, "[t]he supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner." United States v. Conley, 4 F.3d 1200, 1206 (3d Cir. 1993). Reading the affidavit of probable cause in its entirety and in a commonsense and nontechnical manner reveals that the officers reasonably thought the animals were significantly underweight, were living in conditions with feces, and had trash strewn about their caged area. See Conley, 5.3d at 1206. "[A]n affidavit 'should not be judged as an entry in an essay contest, but,

---

[3] Plaintiff on one hand argues that the review must be limited to the four-corners of the affidavit for the search warrant, but then on the other hand, utilizes the veterinarian reports, deposition testimony, and other items to bolster her argument that there was not probable cause.

rather, must be judged by the facts it contains.' <u>Harris</u>, 403 U.S. at 579, 91 S.Ct. at 2080 (quoting <u>Spinelli</u>, 393 U.S. at 438, 89 S.Ct. at 600 (Fortas, J., dissenting)). Affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity ... have no proper place in this area.' <u>Ventresca</u>, 380 U.S. at 108, *quoted with approval in* <u>Gates</u>, 462 U.S. at 235, 103 S.Ct. at 2330–31."
<u>Conley</u>, 4 F.3d at 1207–08.

Plaintiff first argues that the warrant should have separated the probable cause analysis for each animal. Second, she argues that the affidavit of probable cause for the search warrant was overly vague and a "fishing expedition" in that it identified sections 5532, 5533, and 5534 of the Pennsylvania Crimes Code with each section containing numerous violations.

Turning to plaintiff's first argument, the affidavit of probable cause stated:

They observed multiple dogs in a fenced in area in the rear of the residence, confined to chains in living conditions that were less than habitable, such as feces everywhere, miscellaneous household trash strewn about the property. All of the dogs that were observed were emaciated, in particular one of the dogs was severely emaciated. The dog was observed severely emaciated was urinating blood while troopers were there. … The inside of the residence was observed in deplorable conditions with more animals observed inside the residence living in conditions that were less than habitable.

- 8 -

(Doc. 100-4, p.15). Plaintiff contends that the courts should have gone through the warrant and identified which violation each animal could have been found to be in violation of and conducted a probable cause analysis for each one. Plaintiff's argument stems from no cited authority. As a §1983 claim, plaintiff meets neither requirement from <u>Franks</u>.

Turning to plaintiff's second argument, the statutory sections cited by the officer in the affidavit for probable cause "was nothing but a fishing investigation in search of a pond." (Doc. 121, p.13). As Judge Schwab thoroughly addressed, the officers clearly indicated the conditions that were present (trash, feces, deplorable conditions), observed the animals as being "emaciated," and specified the relevant crimes as Title 18 Sections 5532, 5533, 5534 of the Pennsylvania Code, which pertain to neglect of animals, cruelty to animals, and aggravated cruelty to animals. Then, the warrant described the place to be searched and the items to be seized in relation to the listed crimes. (Doc. 116, p.19). Plaintiff's arguments simply lack merit.

Plaintiff repeats the arguments she made before Judge Schwab by complaining of the vague language of "deplorable conditions." As Judge Schwab explained, the supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner. Reading the affidavit in such

a manner, trash strewn about the property and feces everywhere echoes the conditions raised in <u>Tomey</u> and <u>Shickora</u>. Additionally, officers further described the property to be in deplorable condition. The animals were confined to a small fenced in area with unavoidable trash and feces. There was no food present for the animals, and they appeared "emaciated" or underweight. Plaintiff's attempt to claim "deplorable conditions" is a vague term simply misses the mark and ignores the conditions that were present when officers visited the property. Reading the supporting affidavit in its entirety and in a commonsense and nontechnical manner provides more than sufficient evidence that probable cause existed for the search warrant.

### ii. Seizure of the Animals

Before addressing Crooker's additional objections, the court will address the seizure of the animals. During the execution of the search warrant, officers noted the algae, mud, and feces in the area the dogs were living. (Doc. 101, ¶31). The dog said to be urinating blood had sunken-in eyes and was unable to walk on its own. (Doc. 101, ¶32). The photos taken during the execution of the search warrant display the animals as they were on the day they were seized. (Doc. 100-7). The photos showcase: the dogs in caged areas or chained to a fence/tree; the area contained mud, feces,

and trash; dogs with visible rib cages; one dog with what appears to be skin irritation or skin issues; and a rabbit with severely overgrown nails. (Doc. 100-7). Pursuant to the search warrant and after viewing the animals in person and taking photographs, the officers seized seven dogs and one rabbit. (Doc. 100-4). The court agrees with Judge Schwab's report and recommendation in that after finding probable cause existed for the search warrant, then, based on the condition of the animals and the conditions present on the property where the animals were staying, that the defendants have shown undisputed facts that probable cause existed to seize the animals. See Tomey 884 A.2d at 295-96.

Next, plaintiff objects to her whereabouts without presenting any argument as to why this objection impacts or changes the outcome of Judge Schwab's decision. Judge Schwab's report and recommendation pertains to probable cause existing for the search warrant and seizure of the animals. Plaintiff's whereabouts impacts neither of those findings.

Then, plaintiff objects to the seizure of the rabbit. While the search warrant does not specify "rabbit," it does state the items to be seized include, "Any and all animals to include alive, dead, born, or unborn that could be victims of Title 18 Section 5532 Neglect of Animals, Section 5533 Cruelty to Animal, or Section 5534 Aggravated Cruelty to Animals." (Doc. 100-4, p.14).

The affidavit of probable cause stated both that there were additional animals inside the home and explicitly authorized the seizure of all animals located at the specific home and in the curtilage around the residence. (Doc. 100-4, p.14).

Finally, plaintiff objects to the ownership of the animals listed as "theirs," referring to hers and Mr. Peters. Plaintiff simply objects to the categorization as "theirs" without any legal argument to the objection contained within her accompanying brief.

Upon review of these issues, the court agrees with the sound reasoning which led Judge Schwab to her conclusions. As such, the court will adopt the report and recommendation pertaining to these issues as the decision of the court.

## II.   Probable Cause to Arrest the Plaintiff

### a.  Factual Background

On October 19, 2018, Officer Tessitore filed two criminal complaints and affidavits of probable cause charging both Peters and Crooker pursuant to 18 Pa.C.S. §5534(a)(2), with Aggravated Cruelty to Animal (one count); §5533(a) Cruelty to Animal (eight counts); and §5532(a) Neglect of Animal (eight counts). (Doc. 100-4, p.21-34). At the hearing, Officer Tessitore

testified that he spoke with Peters and determined that Crooker also resided at the residence, but she was not present on September 19, 2018. (Doc. 100, p.15). Officer Tessitore also testified that Peters stated Crooker was co-owner of the animals. (Doc. 104, p.10).

On January 18, 2019 a preliminary hearing was held. (Doc. 101, ¶50). At the preliminary hearing, all charges against Crooker were dismissed. (Doc. 104, p.13). On or about January 29, 2019, Plaintiff sought the return of her six living dogs, one deceased dog, and her rabbit. In May of 2021, plaintiff received two of her dogs and the remains of Kelly/Elizabeth. (Doc. 104, p.13). At this point in time, plaintiff has not received her remaining animals. The four dogs and one rabbit were fostered out by Papillon. (Doc. 104-4). The individuals fostering the animals have declined to return the animals. (Doc. 104-4).

### b. Standard of Review

Summary judgment is appropriate if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial

burden, the non-moving party must do more than simply show that there is some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial, Rule 56 mandates the entry of summary judgment because such a failure necessarily renders all other facts immaterial. Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

### c. Discussion

Defendants moved for summary judgment arguing that probable cause existed for the arrest of plaintiff. In addressing false arrest and malicious prosecution claims, the Third Circuit has explained:

> [T]he constitutional violation question [] turns on whether "'a reasonable officer could have believed that probable cause existed' to arrest" the plaintiff at that time. Blaylock v. City of Philadelphia, 504 F.3d 405, 411 (3d Cir. 2007) (quoting Hunter v. Bryant, 502 U.S. 224, 228-29 (1991)). Moreover, because [the officer] arrested [the defendant] on a valid warrant, the District Court properly focused its probable cause analysis on whether [the defendant] "'knowingly and deliberately, or with a reckless

disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant.'" <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997). Therefore, we must concentrate on two elements: first, whether "the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant,' and second, whether those assertions or omissions were 'material, or necessary, to the finding of probable cause. [<u>Wilson v. Russo</u>, 212 F.3d 781, 786-87 (3d Cir. 2000)] (quoting <u>Sherwood</u>, 113 F.3d at 399).'" <u>Dempsey v. Bucknell Univ.</u>, 834 F.3d 457, 468–69 (3d Cir. 2016).

<u>Andrews v. Scuilli</u>, 853 F.3d 690, 697 (3d Cir. 2017). When deciding a motion for summary judgment, the court cannot:

> [E]xclude from the probable cause analysis unfavorable facts an officer otherwise would have been able to consider. Instead, we view all such facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a "fair probability" that a crime occurred.

<u>Dempsey</u>, 834 F.3d at 468. Plaintiff argues that the criminal complaint was lacking information in the affidavit that she was involved in the criminal conduct. Additionally, plaintiff attempts to separate the statements made within the affidavit and attack them individually. However, the facts must be considered in their totality. <u>Id.</u> Plaintiff also claims that additional facts should have been considered in relation to the arrest warrant.

First, plaintiff claims one dog was identified as a score of five out of nine on the Nestle Purina Body Condition System[4], which she claims means they were in ideal body condition. Second, Crooker claims that multiple items listed in the report are not illegal, such as finding rocks in a dog's stomach, flea infestations, and Lyme disease.  Next, plaintiff claims that a failure to receive necessary vaccinations is not a cruelty violation, but actually a different violation. Fourth, Crooker challenges the hearsay statements of Papillon, who does not have a veterinary degree. Papillon explained that the dogs were not being adequately fed and receiving enough water. Fifth, plaintiff claims that "overfilled with feces" is not very clear. (Doc. 104). Then, Crooker claims the matted hair is subjective and does not constitute cruelty. Lastly, the statement about the rabbit's curled nails is vague and conclusory because the nails were not shown to have grown into the pads of the paws and were not causing pain.

Considering the affidavit in its totality, Dempsey, 834 F.3d at 468, including plaintiff's additional facts, the affidavit of probable cause from the

---

[4] The Nestle Purina Body Condition System apparently suggests that a score of one to three is too thin, four and five are ideal, and six to nine is too heavy.

criminal complaint clearly demonstrates much more than a "fair probability" that a crime has occurred.

Crooker also argues that she was not present at the property during the time period when the officers visited the property and then executed the search warrant on September 19 and September 20 of 2018. Title 18 Pa.C.S. §5532(a) explains:

> A person commits an offense if the person fails to provide for the basic needs of each animal to which the person has a duty of care, whether belonging to himself or otherwise, including any of the following:
> (1) Necessary sustenance and potable water.
> (2) Access to clean and sanitary shelter and protection from the weather. The shelter must be sufficient to permit the animal to retain body heat and keep the animal dry.
> (3) Necessary veterinary care.

Additionally, plaintiff argues that she was not present at the property during the time of the arrest and therefore could not be held to have a duty of care. While plaintiff's argument may not have been sufficient to the district magisterial justice to prove guilt beyond a reasonable doubt, that is not the burden here. Officers were informed by Peters, Crooker's husband, that Crooker lived at the property and the animals belonged to both of them. (Doc. 100-4) (stating "The other owner of the animals was identified as the DEFENDANT, Denise Anne CROOKER."). Thus, officers reasonably believed that Crooker was residing at the property and co-owned the

animals and did not act "with at least a reckless disregard for the truth" nor "made false statements or omissions that create[d] a falsehood in applying for a warrant." <u>Andrews</u>, 853 F.3d at 697; <u>Sherwood</u>, 113 F.3d at 399.

In addition to the officers reasonably believing that Crooker both resided at the property and that the animals were neglected based upon the report of the veterinarian, there was clear probable cause for the arrest of Crooker.

Plaintiff asserts what appears to be a <u>Monell</u> claim against PSP for maintaining policies, patterns, and practices that led to the alleged violation of plaintiff's rights and a failure to supervise and train the officers involved. The Third Circuit has explained the requirements for a <u>Monell</u> claim:

> A municipality's failure to train police officers only gives rise to a constitutional violation when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact. <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). We have held that a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. <u>See</u> <u>Bonenberger v. Plymouth Township</u>, 132 F.3d 20, 25 (3d Cir. 1997).

<u>Montgomery v. De Simone</u>, 159 F.3d 120, 126-27 (3d Cir. 1998). Because the court found probable cause existed for the search warrant, seizure, and

arrest, plaintiff's <u>Monell</u> claim fails as a matter of law. <u>See</u> <u>Mulholland v.</u> <u>Gov't Cty. of Berks</u>, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (noting "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim" based on <u>Monell</u>).

A section 1983 claim for deprivation of procedural due process requires two elements. <u>See</u> <u>Chambers ex rel. Chambers v. School Dist. of</u> <u>Philadelphia Bd of Educ.</u>, 587 F.3d 176, 194 (3d Cir. 2009) (hereinafter "Chambers"). The plaintiff must prove "'(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law.'" <u>Id.</u> (quoting <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 234 (3d Cir. 2006)). A state "typically" should give an individual a pre-deprivation hearing. <u>Elsmere Park Club, L.P. v. Town of Elsmere</u>, 542 F.3d 412, 417 (3d Cir. 2008) (citing <u>Fuentes v. Shevin</u>, 407 U.S. 67, 81 (1972)). However, "in special circumstances, a state may satisfy the requirements of procedural due process merely by making available 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'" <u>Id.</u> (quoting <u>Parratt v. Taylor</u>, 451 U.S. 527, 539 (1981), *overruled on other grounds by* <u>Daniels v. Williams</u>, 474 U.S. 327 (1986)).

Plaintiff has not stated a claim for procedural due process as it pertains to the living animals. The complaint alleges, "Defendants [] have refused to return Plaintiff's animals upon the dismissal of charges against her, thus depriving her of a constitutionally protected property interest." (Doc. 1, ¶99). While plaintiff has asserted an individual interest in her property, the living animals, she has not plead that the procedures available to her did not provide due process of law. <u>Chambers</u>, 587 F.3d at 194. Pennsylvania Rules of Criminal Procedure provide for an individual to move for the return of seized property that they are lawfully entitled to possess. Pa. R. Crim. P. 588(a). As plaintiff has not moved under the pertinent Pennsylvania Rule of Criminal Procedure, she cannot claim a cognizable denial of due process. Plaintiff only cites to an agreement with the defendants, but this is not a denial of due process.

However, as it pertains to Kelly/Elizabeth, the dog that was euthanized, the court will order supplemental briefing as contained in the attached order.

III. **Conclusion**

Judge Schwab recommended granting summary judgment on Counts III and V-VII. This court will **adopt** and grant summary judgment on Counts

- 21 -

I, III, IV, and V. The court will require additional briefing to address whether the defendant, Camp Pampillon and Pocono Peak Veterinary Center, are state actors for procedural due process purposes. As probable cause has been found for the search, seizure, and arrest of plaintiff, Count II will be limited to determine if plaintiff's due process rights were violated with the euthanasia of Kelly/Elizabeth without notice or a hearing. The remaining state law claims will be addressed following the supplemental briefing.

An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: May 16, 2023**
20-1695-02

- 22 -