**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

|   |   |   |
|---|---|---|
| **DENISE ANN CROOKER,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:20-cv-1695** |
| **v.** | : | **(JUDGE MANNION)** |
| **GEORGE J. TESSITORE, et al.,** | : | |
| **Defendants** | : | |
|   | : | |

## <u>MEMORANDUM</u>

The court has reviewed the parties' supplemental briefs regarding the existence of state action for the purpose of liability under 42 U.S.C. §1983. Several rulings precede these briefs and will be detailed below. Defendants request that Plaintiff's remaining claims be dismissed as well.

Plaintiff owned animals which lived at her house in Monroe County. State police officers seized those animals pursuant to a search warrant based on a well-formed belief that they were neglected, and filed criminal complaints against Plaintiff and her husband.  Plaintiff was absent from the property at the time of the search, and the charges against her were dismissed. She now says that Defendants euthanized one of her dogs without her consent and have failed to return the remaining animals. Plaintiff lodged a complaint in this court, alleging that Defendants conspired to, and

did, deprive her of various constitutional rights, while also committing other tortious acts defined by Pennsylvania law.

## I.   BACKGROUND

Plaintiff resided at a property in Effort, Pennsylvania. (Doc. 1 at 1; Doc. 100-1 at 35:11–17). From 2016 to 2020, she lived there with her then-husband, Aaron Peters. (Doc. 100-1 at 9:23–11:15). On September 19, 2018, Defendant Gerri Papillon, who runs Defendant Camp Papillon Animal Shelter, (collectively, the "Shelter Defendants"), received a tip about the living conditions of dogs at the property. (Doc. 1 ¶44; Doc. 101 ¶11; Doc. 100-2). At that time, seven dogs and one rabbit, among other animals, lived at Plaintiff's property. (Doc. 100-1 at 39:26:14–18, 39:4–6). Defendant Papillon went to the property, and upon receiving no answer at the door, called the police. (Doc. 1 ¶¶44, 46–47; Doc. 101 ¶13–14).

Defendants Tessitore and Weitz, Pennsylvania State Police (PSP) officers, were dispatched to the property, observed the dogs, and cleared the scene upon communication with the State Dog Warden. (Doc. 101¶15, 17, 24; Doc. 1 ¶48; Doc. 100-4 at 6–9). Plaintiff was not then present at the property, but Mr. Peters was. (Doc. 101 ¶19, 21; Doc. 112 ¶21; Doc. 100-4 at 6). The next day, Defendant Officer Flynn obtained a search warrant of

the property and executed the search with other officers. (Doc. 1 ¶52; Doc. 101 ¶¶26–29; Doc. 100-4 at 7). The officers seized the seven dogs and one rabbit. (Doc. 101 ¶30; Doc. 1 ¶63; Doc. 100-4 at 7). The animals were brought to Defendant Camp Pampillon Animal Shelter, which took them to Defendant Pocono Peak Veterinary Center for evaluation and treatment. (Doc. 1 ¶64, 66; Doc. 100-4 at 7, 9, 35–47).

Defendant Tessitore filed criminal complaints against Plaintiff and Mr. Peters, charging counts of animal cruelty and neglect. (Doc. 101 ¶48; Doc. 1 ¶67; Doc. 100-4 at 19–33). Mr. Peters was found guilty of eight counts under 18 Pa. Cons. Stat. §5532(a) for neglect of animals. (Doc. 101 ¶53; Doc. 19-3 at 77:9–21). Following preliminary hearing testimony that Plaintiff was not present at the property when the dogs were found, and argument that she therefore lacked the mens rea required for these offenses, the charges against her were dismissed. (Doc. 101 ¶53; Doc. 1 ¶77; Doc. 19-3 at 6:14–18, 64:7–12, 67:3–5). Plaintiff requested that Camp Papillon return her dogs and rabbit, (Doc. 104-2 at 6; Doc. 104-1 at 2), but alleges that as of the filing of the complaint they had not been returned to her, (Doc. 1 ¶88), and avers now that only two dogs have been returned. (Doc. 132 at 5). One dog, named Elizabeth, was euthanized while in the possession of the Shelter

Defendants. (Doc. 1 ¶78; Doc. 101 ¶44; Doc. 19-1 at 24:22–25:14; Doc. 19-3 at 60:6–20).

## II.   PROCEDURAL HISTORY

Plaintiff sued Defendants Tessitore, Weitz, Flynn, Papillon, the Pennsylvania State Police, Camp Papillon Animal Shelter, Pocono Peak Veterinary Center, and Samantha Thompson, V.M.D., of Pocono Peak, alleging claims of (I) conspiracy under 42 U.S.C. §1985 against all defendants; (II) violations of the Fifth And Fourteenth Amendment under §1983 against all defendants; (III) violations of the Fourth and Fourteenth Amendment under §1983 against Defendants PSP, Tessitore, Flynn, Papillon, and Camp Papillon; (IV) failure to train against PSP; (V) malicious prosecution against Defendants PSP, Flynn, and Tessitore; (VI) conversion against Defendants PSP, Tessitore, Papillon, Camp Papillon, Pocono Peak, and Dr. Thompson; and (VII) replevin against Defendants PSP, Tessitore, Papillon, Camp Papillon, Pocono Peak, and Dr. Thompson. (Doc. 1). By the parties' stipulation, the complaint was amended as follows: (1) Count I was brought as a state-law conspiracy claim and not under §1985; (2) Count II was no longer brought against PSP, and no longer brought Fifth Amendment claims against the individual PSP Defendants; (3) Count III was no longer

brought against PSP; (4) PSP was replaced as Count IV defendant with multiple John Doe defendants as placeholders in their supervisory roles; (5) Count V's malicious prosecution claim was brought under state law, not federal law, and PSP was removed as a defendant; (6) PSP was removed as a defendant to Count VI's conversion claim; and (7) PSP was removed as a defendant to Count VII's replevin claim. (Doc. 40; Doc. 41).

The court granted Defendants Pocono Peak and Dr. Thompson's motion to dismiss Count II for failure to state a claim, (Doc. 63 at 16), reasoning that these Defendants were not "state actors" as required for liability under section 1983. (Id. at 12, 15). Following discussion with the parties, the court ordered limited discovery on the issue of probable cause for the seizure of animals and permitted the filing of motions for summary judgment following that discovery. (Doc. 87; Doc. 89). Defendants moved for summary judgment on Counts III and V–VII, arguing that probable cause existed, and further requested that the court dismiss Counts I, II, and IV. (Doc. 99). The court granted summary judgment on Counts I, III, IV, and V, and on Count II except for the issue of whether Plaintiff's right to due process was violated by the euthanasia of her dog Elizabeth. (Doc. 123; Doc. 124). It further ordered that the parties provide supplemental briefing on the issue of whether Camp Pampillon and Pocono Peak are state actors as required

for section 1983 liability, (id.), and stated that the remaining state law claims would be addressed following this supplemental briefing. (Doc. 123 at 22). The parties have submitted their supplemental briefs. (Doc. 126; Doc. 132).

### III.   LEGAL STANDARDS

#### A. Standard of Review

Given the somewhat complicated procedural history of this case, it is important at the outset to clarify exactly where the instant decision is situated in the scheme of the litigation, in order to properly set forth the standard of review.

As discussed above, discovery in this case has so far been limited to the issue of probable cause. (Doc. 87; Doc. 89; Doc. 93). Because the state actor issue is separate from the issue for which discovery has been conducted, it must be considered under the standard applicable to a motion to dismiss. So the court asks whether Plaintiff has failed to state a claim upon which relief may be granted with respect to the Shelter Defendants.[1] *See* Fed. R. Civ. P. 12(b)(6). The question arises: in making this determination, what evidence may be considered?

---

[1] As discussed *infra* Section IV.A, this question has already been answered with respect to Pocono Peak. (Doc. 63).

Defendants in their brief rely not only on the allegations of the Complaint, but also on the transcript from Plaintiff's preliminary hearing, (Doc. 19-1), which was attached to Plaintiff's disclosure report, (Doc. 19), as well as exhibits attached to their motion for summary judgment, (Doc. 100), including Plaintiff's deposition, (Doc. 100-1), and PSP's General Offense Report, (Doc. 100-4), and exhibits attached to their supplemental brief, (Doc. 126), including declarations of Shaun Flynn, (Doc. 126-1), and Michael Spada, (Doc. 126-2). (See Doc. 126 at 2–6).

Plaintiff primarily relies on the allegations of her Complaint, (Doc. 1), but also cites the preliminary hearing transcript, (Doc. 19-1), and exhibits attached to her supplemental brief, (Doc. 132), including an "Agreement to Release Animals" entered between her and the PSP Defendants, (Doc. 132-1 at 1–5), email correspondence from PSP to Camp Papillon, (Id. at 6–8), correspondence from Camp Papillon to Plaintiff, (Id. at 9–10), and a PSP Chain of Custody Receipt, (Id. at 11). (See Doc. 132 at 3–5).

"Generally, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (internal quotations omitted). "But where a document is integral to or explicitly relied upon in the complaint, it may be

considered without converting the motion to dismiss into one for summary judgment." *Id.*

The complaint here relies on and attaches a number of exhibits, including Defendant Flynn's search warrant application, affidavit of probable cause, and receipt of inventory, (Doc. 1 at 32–36 & ¶52), the criminal complaint against Plaintiff (Id. at 37–42 & ¶67), and correspondence from Plaintiff to Camp Papillon. (Id. at 43–46 & ¶¶86–87). And a number of the complaint's allegations cite testimony from the preliminary hearing, (Id. ¶¶46–47, 66, 72, 78–83). The preliminary hearing transcript, (Doc. 19-1; Doc. 19-2; Doc. 19-3), is thus "integral to or explicitly replied upon in" the complaint. In deciding the "state actor" issue, consequently, the court may consider the exhibits attached to Plaintiff's complaint and the preliminary hearing transcript, but not the other exhibits relied on by the parties.

In considering the complaint itself for failure to state a claim, the court must "accept as true" its "factual assertions." *Doe v. Princeton Univ.*, 30 F.4th at 342. But it need not accept "legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must then "determine whether the facts alleged in the complaint are sufficient to show

that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679)).

## B. State Actor Determination

In Count II of her complaint, Plaintiff sues Defendants Camp Pampillon and Pocono Peak, among other defendants, under 42 U.S.C. §1983 for violations of her rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. (Doc. 1 ¶99). Section 1983 allows a private right of action for a person who was deprived of a constitutional right by a person acting under the color of law. *See Thomas v. Tice*, 948 F.3d 133, 138 (2020). Per the court's previous order, (Doc. 124), Count II is now limited to a due process claim.

While the Fourteenth Amendment's Due Process clause applies to acts taken under the color of state law, the Fifth Amendment's Due Process clause applies only to actions of the federal government. *B & G Constr. Co. v. Dir., Off. Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011). As Plaintiff does not allege that any actions by Defendants were taken under the authority of or in concert with the federal government, Count II will be treated as asserting a due process claim under the Fourteenth Amendment only, which provides that a state may not "deprive any person

of life, liberty, or property, without due process of law." U.S. Const. amend. XIV §1.

The Fourteenth Amendment thereby "governs only state conduct, not that of private citizens." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). Accordingly, section 1983, the mechanism by which a citizen may seek redress for a deprivation without due process, requires that the deprivation was effected "under color of law." *Id.* The requirements of "state action" and "under color of law" are "interpreted identically." *Id.* "Thus, a plaintiff seeking to hold an individual liable under §1983 must establish that she was deprived of a federal constitutional or statutory right *by a state actor*." *Id.* (emphasis added).

The "state actor" designation is not limited to the government itself, or to those formally operating within it. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 295 (2001). Instead, "seemingly private behavior" may be considered state action "if, though only if, there is such a close nexus between the State and the challenged action" that it "may be fairly treated as that of the State itself." *Id.* Our Court of Appeals has "outlined three broad tests … to determine whether state action exists":

    (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state;

    (2) whether the private party has acted with the help of or in concert with state officials; and

    (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach*, 589 F.3d at 646 (internal quotations omitted). "Under any test, the inquiry is fact-specific." *Id.*

## IV.   DISCUSSION

### A. Pocono Peak

On Defendant Pocono Peak's motion to dismiss, (Doc. 10), District Judge John E. Jones concluded that Pocono Peak was not a state actor, and so dismissed Plaintiff's §1983-related claims as they concerned the Pocono Peak Defendants. (Doc. 63 at 15). We do not revisit this decision, and the parties have appropriately limited their arguments to Camp Pampillon.

### B. Camp Pampillon

No one disputes that Camp Pampillon is a private, and not a governmental, entity. (Doc. 126 at 8; Doc. 132 at 5). The court must therefore determine "if there is such a close nexus between the State and the challenged action" by Camp Pampillon that it "may be fairly treated as that

of the State itself." *Brentwood Acad.*, 531 U.S. at 295 (internal quotations omitted).

First, then, how was the State involved here? The parties agree that the Pennsylvania State Police seized Plaintiff's animals from her property. (Doc. 101 ¶30; Doc. 1 ¶63). PSP then transferred Plaintiff's dogs to Camp Pampillon. (Doc. 126 at 6; Doc. 1 ¶63). Second, what actions of Camp Pampillon are challenged? Plaintiff alleges that Camp Pampillon "seized and then retained Plaintiff's animals," "refused to return" them, and "euthanized or directed, approved, and/or ratified the euthanasia of the dog named Elizabeth without consent or a due process hearing." (Doc. 1 ¶99). But Count II has now been limited to the challenged action of euthanasia. (Doc. 124 at 1). Third, how close is the nexus, if any, between the State (i.e. the PSP) and this euthanasia?

## 1. Did Camp Pampillon exercise powers that are traditionally the exclusive prerogative of the state?

Plaintiff contends that the Shelter Defendants exercised powers that are traditionally the exclusive prerogative of the state. (Doc. 132 at 6–11). She first analogizes this case to *Amig v. County of Juniata*, 432 F. Supp. 3d 481, 486–87 (M.D. Pa. 2020), in which the court found that a defendant private corporation, which designed, manufactured, and sold urine drug tests

to a state correctional facility, *id.* at 483, had thereby undertaken an exclusive state function, because "drug-testing in a prison may be considered a traditional state function." *Id.* at 487. Plaintiff does not, however, explain how the action taken by Camp Pampillon here is akin to drug-testing in a prison. (Doc. 132 at 6–7).

She also cites 18 Pa. Cons. Stat. §5553, which establishes the procedure for obtaining a search warrant where a crime of cruelty to animals is alleged. (Doc. 132 at 7). Section 5553 authorizes the issuance of a search warrant to (in addition to police officers) "an agent of a society or association for the prevention of cruelty to animals." 18 Pa. Const. Stat. §5553. That warrant may authorize a search of the property, as well as a seizure of animals which were the subject of the alleged crime; and when animals are so seized and are "found to be neglected or starving," the agent "is authorized to provide for the care that is reasonably necessary," and to provide for an animal's "humane destruction" if it is "disabled, injured, or diseased beyond reasonable hope of recovery." *Id.* Plaintiff asserts that "[c]learly" these functions are "statutorily delegated *only* to police officers." (Doc. 132 at 8).

Plaintiff further notes that Chapter 37 of Title 22 provides for the appointment of "humane society police officers," who are authorized to

- 13 -

enforce Pennsylvania's animal cruelty laws. 22 Pa. Cons. Stat. §3708(a); *see also* §3702 (defining a "humane society police officer" as "any person who holds a current appointment under this chapter to act as a humane society police officer for a society of association for the prevention of cruelty to animals"); §3703 ("It shall be unlawful for any individual to hold himself forth as a humane society police officer unless the individual has obtained an appointment pursuant to this chapter."). She then observes that "the obligation to provide care to an animal and to authorize an animal's destruction is *not* delegated to a private person." (Doc. 132 at 9). Because the Shelter Defendants executed these functions, she argues, they were performing exclusively state functions. (Id.).

But it does not follow that because the government has authorized certain actors to provide for the humane destruction of seized animals, such action becomes the *exclusive* prerogative of the state. Contrary to Defendants' suggestion, §5553 does not provide that *only* police officers or agents of humane societies may euthanize animals in their possession. This statute does not show that providing for the humane destruction of animals is traditionally the exclusive prerogative of the state. Nor is the court

- 14 -

convinced that such action nevertheless is traditionally the exclusive prerogative of the state.[2]

---

[2] One might reason that, because it was occasioned by the police's execution of a criminal search warrant and their seizure of the dogs, the challenged action here was indeed the exclusive prerogative of the state. But that would be to frame the inquiry too narrowly.

Consider *Leshko v. Servis*, 432 F.3d 337, 434 (3d Cir. 2005). The plaintiff there sued her foster parents under §1983, alleging that they had left her sitting unattended next to a pot of hot water and had failed to seek immediate medical attention after she was burned. *Id.* at 338, 340. In deciding whether her parents were state actors who could be sued under §1983, the court asked "whether the provision of care to children in foster homes is a traditionally exclusive governmental function." *Id.* at 343. Even though "removing children from their homes and placing them with other caregivers arguably are exclusively governmental functions in Pennsylvania," the court concluded that "no aspect of providing care to foster children in Pennsylvania has ever been the exclusive province of the government." *Id.* Applied here, *Leshko*'s reasoning instructs that the fact that Camp Papillon would not have had the dog if not for police investigation (like the fact that foster parents would not have their children if not for the state's foster placement) does not convert all its subsequent actions into exclusive state functions. Rather, the action itself is considered separately from its necessary preconditions.

The humane destruction of dogs has not traditionally been the exclusive prerogative of the state. At least as far back as 1913, Pennsylvania has authorized agents of associations for the prevention of cruelty to animals to provide for the humane destruction of animals. 3 Pa. Cons. Stat. §325, Act No. 308 of June 7, 1913, P.L. 462 §1. Recognizing that humane societies provide for the euthanasia of domestic animals, the Animal Destruction Method Authorization Law of 1983 prohibited and permitted certain means for doing so. 3 Pa. Cons. Stat. §328.301–302, Act No. 83 of Dec. 22, 1983, P.L. 303 ch. 3; *see* Pa. Senate, 1983 Legis. J. at 1504–07, Pa. H. Rep. 1983 Legis. J. at 1386–90. Pennsylvania law also recognizes that euthanasia is carried out at kennels, and accordingly requires certain procedures accompany it. 3 Pa. Cons. Stat. §459-207(a.3)(3)(iii), Act No. 225 of Dec. 7,

*(footnote continued on next page)*

Moreover, nowhere does the Complaint allege that Gerri Papillon or Camp Papillon was a humane society police officer; instead, it alleges that "Defendant Papillon is a civilian and has no law enforcement authority." (Doc. 1 ¶45). So neither can it be said that Defendant Papillon was a state actor by reason of Chapter 37 of Title 22.

### 2. Is there a sufficiently close nexus between the state and Camp Pampillon's challenged action?

The second and third tests described by *Kach* have alternatively been described as the "close nexus" test. *See* 589 F.3d at 648 ("Under [the third] test, state action will be found if there is a sufficiently close nexus between the state and the *challenged* action of the regulated entity so that the action may be fairly treated as that of the State itself") (internal quotations omitted); *Madero v. Luffey*, 439 F. Supp. 3d 493, 514 (W.D. Pa. 2020) ("These tests [described by *Kach*] are commonly referred to as (1) the public function test, (2) the close nexus test, and (3) the symbiotic relationship test."). Plaintiff contends that the close nexus test is satisfied here.

"The purpose of" the close nexus test "is to 'assure that constitutional standards are invoked only when it can be said that the State is *responsible*

---

1982, P.L. 784. Legislation such as this confirms that this activity has not been traditionally considered the exclusive function of the State.

for the *specific conduct* of which plaintiff complains." 589 F.3d at 648 (quoting *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 76 (3d Cir. 1991)). "The State will be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the state." *Id.*

Regarding responsibility for the euthanasia, Plaintiff's complaint simply alleges that "one of the dogs, while in Defendants' custody, was euthanized without obtaining Plaintiff's consent or a court order." (Doc. 1 ¶78). As Plaintiff points out, (Doc. 1 ¶79; Doc. 132 at 9), PSP Defendant Tessitore testified at the preliminary hearing that he did not destroy the dog, did not know under whose authority it was euthanized, and did not personally obtain anyone's consent prior to euthanasia. (Doc. 19-1 at 24:22–25:14). Defendant Papillon testified that she authorized the destruction of Elizabeth, and that the decision was veterinary. (Doc. 19-3 at 60:6–20). Neither the complaint's factual allegations nor the preliminary hearing transcript on which the Complaint relies demonstrates that the State coerced, encouraged, or even weighed in on the decision to euthanize Elizabeth. Therefore, it cannot be said that the State was responsible for the specific conduct which is challenged here.

- 17 -

For the foregoing reasons, the court concludes that Plaintiff has not stated a plausible claim for §1983 relief against the Shelter Defendants, because she does not challenge state action. Therefore, Count II will be dismissed as against Defendants Papillon and Camp Papillon.

### C. PSP Defendants

Defendants request that Count II also be dismissed as against the PSP Defendants, because they were not involved in the decision to euthanize Elizabeth. (Doc. 126 at 16).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As discussed *supra* Section IV.B.2, there is no indication that the PSP Defendants were personally involved in the euthanasia. The Complaint's allegation that Elizabeth was euthanized "while in Defendant's custody" is too unspecific to suffice as a factual allegation of the PSP Defendants' involvement in the decision to euthanize. (Doc. 1 ¶78). And the preliminary hearing transcript, relied on by the Complaint, adds nothing that demonstrates such involvement.  (Doc. 19-1 at 24:22–25:14; Doc. 19-3 at 60:6–20). Plaintiff has failed to state a due process claim against PSP Defendants for the euthanasia of Elizabeth, for she has not alleged their

personal involvement in that action. Count II will therefore be dismissed as against the PSP Defendants.

### D. Supplemental Jurisdiction

Because the court concludes that Plaintiff has not stated a claim against the Shelter Defendants or the PSP Defendants under Count II of the Complaint, and because these constitute the remaining defendants for this count, Count II will be dismissed. That leaves only Counts VI and VII, which are state-law claims of conversion and replevin, respectively. (Doc. 1 at 28–30).

Because only state-law claims remain, the court reexamines its jurisdiction. Plaintiff originally brought claims under federal law, and her related state-law claims could therefore be entertained pursuant to supplemental jurisdiction. *See* 28 U.S.C. §1367(a). Where a plaintiff brings claims under both federal and state law, as here, and all the claims over which the court has original jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state-law claims. *Id.* §1367(c)(3). Indeed, "[i]n the ordinary course, where the claims over which the district court has original jurisdiction are dismissed before trial, the district court *must* decline to decide the pendent state claims," unless there is an "affirmative justification for doing so" based on "considerations of judicial

economy, convenience, and fairness to the litigants." *N. Sound Capital LLC v. Merch & Co., Inc.*, 938 F.3d 482, 494 n.11 (3d Cir. 2019) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)).

Here, as the parties have only conducted discovery on the issue of probable cause and little argument has been presented regarding Plaintiff's state-law claims, the court finds no affirmative justification for exercising supplemental jurisdiction over Counts VI and VII. These counts will therefore be dismissed without prejudice. *See Kach v. Hose*, 589 F.3d at 650 ("If a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits.").

## V.  CONCLUSION

As explained above, Plaintiff's remaining counts, Counts II, VI, and VII, will be dismissed. Count II will be dismissed with prejudice, and Counts VI and VII will be dismissed without prejudice. An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 11, 2023**
20-1695-03